UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURPREET SINGH GOSAL,<br><br>Petitioner,<br><br>v.<br><br>NEIL MCDOWELL,<br><br>Respondent. | No. 2:15-cv-2101 TLN DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his conviction imposed by the Sacramento County Superior Court in 2013 for second degree murder, for which he received a sentence of 35 years to life in prison. Petitioner alleges here that the trial court committed prejudicial error by incorrectly instructing the jury. For the reasons set forth below, this Court will recommend that the petition be denied.

## BACKGROUND

**I.  Factual and Procedural Background**

The California Court of Appeal for the Third Appellate District provided the following factual and procedural summary:

////

**A. Evidence at Trial**

On the weekend of August 30 and 31, 2008, a festival was held at the Bradshaw Sikh Temple in Sacramento, which was attended by several hundred people. The festival provided for games of field hockey, basketball, track and field, and cricket in nearby areas.

Defendant testified that in 2004 he lived in Elk Grove, which is where he became friends with Amandeep Dhami (Dhami). In 2006 defendant moved to Indiana. While in Indiana, defendant received threatening telephone calls from one Lahdi in California because defendant had refused to help Lahdi's friends in a criminal matter. Defendant stayed in touch with Dhami and was aware that Dhami was having problems with Poma, who knew Lahdi. Defendant learned that there was to be a meeting between Dhami and Poma on Saturday, August 30. Thinking this would be a good opportunity talk things over, defendant flew to Sacramento on that Saturday with a scheduled return flight for the following day around noon. Dhami and his friend Navi picked up defendant at the airport Saturday evening and, after making a few short stops, they drove to the Gun Room, where Navi was to buy ammunition. However, because Navi did not have identification defendant bought the ammunition, which consisted of a large quantity of bullets of various calibers. The meeting with Poma did not take place so defendant went to a motel room with Dhami and others where they hung out.

The next day, defendant's ride to the airport failed to show and he missed his scheduled flight. Dhami eventually picked defendant up and the two decided to go to the festival. Defendant put his duffle bag in the passenger seat of Dhami's sport utility vehicle (SUV) and saw a black backpack behind the seat. The two drove to the festival, parked, and walked to a drink stand. Defendant denied that either he or Dhami took anything out of the SUV and he denied having a gun or seeing Dhami with one. About 20 or 30 minutes later, while Dhami and defendant were walking to talk to some men, someone yelled Dhami's nickname and 15 to 20 men, among whom was Alvinder Khangura (Alvinder), were looking at them. Defendant recognized some of the men as the ones giving Dhami trouble.

As the men walked toward Dhami and defendant, Dhami said to Alvinder, "[W]hat's up bro?" Alvinder replied, "[N]o, bro," and punched Dhami in the face, and the men continued to advance toward defendant and Dhami. Dhami pulled a gun and the men with Alvinder backed up a few steps. A man in a white shirt pulled a gun, Alvinder hit Dhami again, the men started toward Dhami. Defendant heard three or four shots and the men started hitting Dhami and defendant. Someone struck defendant on the back of his head, causing him to stumble into Dhami who then handed defendant a second gun. Defendant tried to persuade the men not to fight, but they continued to beat him. Defendant backed up, fired about three shots into the ground, and then ran for the parking lot. As he ran, he threw away the gun and the keys to the SUV. Defendant was caught and beaten some more after which he was taken back to the festival area where he was held and later arrested.

2

> The prosecution's evidence regarding the shooting was considerably different than defendant's version. Tajinder Uppal testified that he was at the festival on Sunday, about 1:00 p.m., and was returning to his truck to stow his gear after having played field hockey when he saw defendant drive into the parking lot in Dhami's SUV. Defendant and Dhami got out of the SUV, opened both rear passenger doors, and appeared to get something from the vehicle. As defendant and Dhami walked toward the fields, Uppal did not see anything in their hands. Uppal started walking toward the temple when he heard gunshots and saw people chasing defendant.
>
> Manwinder Singh Mavi (Mavi) testified that he was at the festival with his friends Sahibjeet Singh, Alvinder, and Poma watching a cricket match when he saw defendant and Dhami come through the main entrance and walk toward them. When defendant and Dhami were about 10 feet from Mavi's group, Dhami angrily and loudly cursed Poma and Poma's sister. Neither Poma nor anyone else argued back. Mavi saw Dhami and defendant each pull out a gun and start shooting in the direction of Mavi's group. Dhami fired several shots, ran out of ammunition, and tried to pull out another gun. After Dhami and defendant ran out of ammunition they ran but were caught by some of the men. Dhami was able to get into a car and escape. Defendant was caught, beaten, and then held for the arrival of law enforcement. Poma was fatally shot and died at the scene, and Sahibjeet Singh was seriously wounded.
>
> Law enforcement agents searched the festival area. Beneath a Camry in the parking lot they found a .44-caliber revolver and a black backpack. The backpack contained five boxes of various calibers of ammunition, each of which bore a price sticker indicating it was purchased from the Gun Room. The revolver was loaded with .41-caliber bullets whose head stamps matched the head stamps of a box of .41-caliber head stamps found in the backpack.

People v. Gosal, No. CO74473, 2015 WL 3563543, at *1-2 (Cal. Ct. App. June 9, 2015).

## II.     Direct Review

Petitioner sought review in the California Court of Appeal Third Appellate District, which affirmed the conviction and sentence on June 9, 2015, through a reasoned decision. Lodged Docs. ("LD") 13, 17. He then sought review in the California Supreme Court, which summarily denied review on August 12, 2015. LD 18-19.

## III.    Collateral Review

Petitioner filed this petition for writ of habeas corpus pursuant to 42 U.S.C. § 2254 on October 7, 2015, and Respondent filed an Answer on August 31, 2016. (ECF Nos. 1, 14.) Petitioner filed a traverse on November 10, 2016. (ECF No. 19.)

////

# STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their

treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir.

2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**ANALYSIS**

**A.   CALCRIM No. 3472**

Petitioner first argues that jury instruction CALCRIM No. 3472 violated his constitutional rights because it misstated California law, affected his ability to present a proper defense, and lowered the prosecution's burden of proof.

    **a.   Opinion of the California Court of Appeal**

The California Court of Appeal denied Petitioner's first claim for relief as follows:

> The defense was self-defense, defendant admitting he fired several shots into the ground, but only after he and Dhami were being assaulted with clubs and hockey sticks. The trial court instructed the jury on self-defense and with CALCRIM No. 3472, which provides: "A person does not have the right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force." Defendant contends there was insufficient evidence to support the instruction. We disagree.

7

"""[I]n criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference. [Citation.]' [Citation.]" (*People v. Saddler* (1979) 24 Cal.3d 671, 681.) The facts supporting an instruction do not need to be conclusively established before the instruction can be given; instead, "'there need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference. [Citations.]'" (*People v. Alexander* (2010) 49 Cal.4th 846, 921.) Stated another way, "[W]e do not consider the credibility of a witness's testimony in determining whether the record holds substantial evidence to warrant a particular jury instruction." (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1419.)

Evidence supporting the instruction is as follows. Defendant flew to Sacramento purportedly to take advantage of an opportunity for him and Dhami to talk over their respective problems with Poma and Lahdi; however, shortly after Dhami and Navi picked defendant up at the airport they went to the Gun Room where defendant purchased a large amount of ammunition of varying calibers, an act hardly consistent with talking things over. The next day, defendant put his duffle bag in Dhami's SUV, saw a black backpack behind the passenger seat, and they drove to the festival.

Defendant and Dhami were seen pulling into the parking lot in Dhami's SUV, getting out, and appeared to be taking something out and then walking toward the fields. Shortly thereafter, gunshots were heard and people were running from the area toward which defendant and Dhami had been walking. After the shooting, the backpack and a loaded gun were found under a car in the parking lot, the gun and backpack contained ammunition purchased from the Gun Room.

Mavi testified he was with Poma and other friends watching a cricket match when he saw Dhami and defendant enter the area, walk to within 10 to 12 feet of Mavi and Poma. Instead of trying to talk things over with Poma, Dhami started cursing at Poma and Poma's sister. Dhami then [*sic*] and asked Poma, "[N]ow where do you want to go," meaning what are you going to do about it. When neither Poma nor anyone else in Mavi's group responded or argued back, Dhami and defendant each pulled out a gun, which meant the guns were hidden on them, and began shooting toward Mavi and his group.

From this evidence, the jury could reasonably infer defendant and Dhami had gone to the festival with the intention of shooting Poma. Instead of immediately shooting Poma, with guns hidden, Dhami insulted and challenged Poma, suggesting that Dhami and defendant were trying to get Poma and/or the group he was with to initiate an assault upon them. This, in turn, would afford Dhami and defendant

8

the benefit of claiming self-defense. Accordingly, there was sufficient evidence to support the CALCRIM No. 3472 instruction.

Defendant sees the circumstances of the present case as indistinguishable in its circumstances from those in *People v. Conkling* (1896) 111 Cal. 616 (*Conkling*). Defendant is wrong.

In *Conkling*, the victim put up a fence to stop neighborhood residents from crossing his land on their way to the post office. When the defendant attempted to cross the victim's land, the defendant was confronted by the victim who, after a heated argument, would not permit the defendant to continue. Days later the defendant armed himself with a rifle and, in the victim's absence, tore down the fence. Yet a few days later, the defendant, again armed with the rifle, was returning from the post office across the victim's land when the victim confronted him. Trouble arose between the two and the defendant fatally shot the victim. Other than the defendant, there were no witnesses to the shooting. (*Conkling*, *supra*, 111 Cal. at pp. 619-621)

The defendant was charged with murder and claimed self-defense. Part of the trial court's instructions to the jury on self-defense stated the jury could infer that if, prior to the shooting, the defendant provoked a quarrel or was the cause of a danger he had brought upon himself, such conduct would forfeit his right to a claim self-defense. (*Conkling*, *supra*, 111 Cal. at pp. 624-625.) The Supreme Court found the instruction was reversible error because there was no evidence to show defendant initiated a quarrel or had brought danger upon himself; accordingly, there was no evidence to support the instruction. (*Id.* at pp. 625-626, 628.)

Defendant argues the present case comes within the scope of *Conkling* because "[t]he prosecution presented no direct evidence that [he] and [Dhami] went to the festival to provoke a fight with the intent to create an excuse to use force," and there was only circumstantial evidence that Dhami intended to provoke a fight, or that defendant knew of the weapons in Dhami's backpack. What defendant fails to grasp is that the facts giving rise to the giving of an instruction need not be conclusively established, but instead, "'there need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference.' [Citations.]" (*People v. Alexander*, *supra,* 49 Cal.4th at p. 921.) Indeed, Mavi's testimony that when none of his group responded to Dhami's verbal assault upon and challenge to Poma, Dhami and defendant pulled out guns and started shooting, constitutes evidence that Dhami and defendant were the initial aggressors. Accordingly, *Conkling* is factually distinguishable.

Counsel argues that *People v. Ramirez* (2015) 233 Cal.App.4th 940 (*Ramirez*) states that CALCRIM No. 3472 is not a correct statement of the law. *Ramirez* is inapposite because it dealt with whether or not it was applicable to the circumstances of that case.

People v. Gosal, No. CO74473, 2015 WL 3563543, at *2-4 (Cal. Ct. App. June 9, 2015).

**b.     Discussion**

In this federal habeas petition, Petitioner argues that CALCRIM No. 3472 misstated California law regarding self-defense, which deprived him of his constitutional right to present a proper defense and lessened the prosecution's burden of proof. In support, he relies on People v. Ramirez, 233 Cal. App. 4th 940 (2015), which held that a defendant who provokes a nondeadly confrontation may nonetheless defend himself against the victim's unjustified use of deadly force. On direct appeal, Petitioner presented this claim with reliance on People v. Ramirez, to the California Court of Appeal. However, he did not mention People v. Ramirez in his petition for review before the California Supreme Court. Compare LD 13 and 16 with LD 18.

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). Since Petitioner did not present his claim, premised as it was on People v. Ramirez, to the California Supreme Court, it appears that it is indeed unexhausted.

Nonetheless, the Court may proceed to the merits of this claim because it does not present a colorable claim for relief. Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005). "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). A federal court's inquiry on habeas review is not whether the challenged instruction "is undesirable, erroneous, or even 'universally condemned,'

but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). "In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." Middleton v. McNeil, 541 U.S. 433, 437 (2004). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id. The pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (internal quotation marks omitted) (quoting Cupp, 414 U.S. at 147).

The California appellate court determined that there was sufficient evidence to support giving the jury the imperfect self-defense instruction. This determination was not unreasonable in light of the evidence before the court, which showed that Petitioner flew to Sacramento purportedly to speak to Poma and Lahdi about problems they were having. Immediately upon arrival to Sacramento, he and Dhami went to the Gun Room where Petitioner purchased a large amount of ammunition.

The very next day, he and Dhami drove to the festival with Petitioner's duffle bag and another black backpack behind the passenger seat. Upon arrival at the festival, Petitioner and Dhami were seen getting out of the Dhami's vehicle, taking something out of it, and walking towards the fields. As Mavi saw Petitioner and Dhami walk towards him and Poma, Dhami started cursing at Poma and Poma's sister. Neither Mavi nor Poma did or said anything in response; and Dhami and Petitioner then each pulled out a gun and began shooting.

As the appellate court noted, the jury could reasonably infer that Petitioner and Dhami had gone to the festival with the intention of shooting Poma after trying to insult him so as to force Poma to initiate an assault. Had Poma done so, that would have provided Dhami and Petitioner the benefit of claiming self-defense. Thus, there was sufficient evidence to support the

11

prosecution's theory that Petitioner instigated a confrontation in order to then assert self-defense. The fact that Petitioner posited an alternate scenario does not automatically render the evidence supporting this jury instruction inadequate.

Additionally, Petitioner's reliance on People v. Ramirez is inapposite because, unlike in that case, the facts here supported the CALCRIM No. 3472 instruction. That is to say, even though Petitioner's attempt to instigate a fight with Poma was unsuccessful, Petitioner *still* withdrew his gun and began to shoot. Because there was no unjustified use of deadly force by the victim before Petitioner resorted to his own use of force, People v. Ramirez has no bearing here.

Based on the foregoing, Petitioner is not entitled to habeas relief on this claim.

**B.      CALCRIM Nos. 371 and 371**

Petitioner next argues that two jury instructions created impermissible inferences about his awareness of guilt: CALCRIM No. 371 (based on the act of hiding evidence) and CALCRIM No. 372 (based on the act of running away).

      **a.      Opinion of the California Court of Appeal**

The California appellate court denied Petitioner relief on this claim as follows:

> As given to the jury, CALCRIM No. 371 stated: "If the defendant tried to hide evidence, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself." CALCRIM No. 372 stated: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."
>
> Defendant argues these instructions violated his right to due process because they "permitted the jury to infer one fact, guilt, from other facts, i.e., alleged false evidence and flight." The instructions do no such thing.
>
> "As the United States Supreme Court has observed: '. . . A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense

12

> justify in light of the proven facts before the jury. [Citation.]'" (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.) And an "inference of consciousness of guilt from . . . fabrication or suppression of evidence is one supported by common sense, which many jurors are likely to indulge even without an instruction." (*People v. Holloway* (2004) 33 Cal.4th 96, 142.)
>
> Each instruction informs the jury that if they find the predicate conduct then such conduct "may show that he was aware of his guilt." But each instruction further states that such a finding "cannot prove guilt by itself," thereby prohibiting the jury from basing a finding of guilt on defendant's hiding evidence or his fleeing the scene. Consequently, the instructions do not have the effect attributed to them by defendant.
>
> Defendant further argues that "[t]he language of CALCRIM No. 371 is akin to that found constitutionally invalid in *United States v. Di Stefano* (2d Cir. 1977) 555 F.2d 1094." To the contrary, CALCRIM No. 371 conforms to the instruction approved by the appellate court in *Di Stefano*. In *Di Stefano*, the trial court instructed the jury: "'Evidence has been introduced that the defendant in this case, Linda Di Stefano, made certain exculpatory statements or claimed statements outside of this courtroom, explaining her actions. [¶] If the jury finds such statements were untrue and the defendant made them with knowledge of their falsity, the jury may consider them as circumstantial evidence of the defendant's guilt.'" (*United States v. Di Stefano*, supra, 555 F.2d at p. 1104 (*Di Stefano*), italics omitted.)
>
> In finding the instruction "incorrect," *Di Stefano* stated: "It is clear that this was incorrect. False exculpatory statements are not admissible as evidence of guilt, but rather as evidence of consciousness of guilt." (*Di Stefano*, supra, 555 F.2d at p. 1104.) We do not see CALCRIM No. 371 as "akin" to the challenged instruction in Di Stefano.
>
> CALCRIM No. 372 does not suffer from the purported defect in the instruction as seen by the court in *Di Stefano*, to wit, that the evidence of knowing false statements are not admissible "as evidence of guilt" but are only admissible "as evidence of consciousness of guilt." CALCRIM No. 372 states that the act of fleeing "may show that he was aware of his guilt." In *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154 (*Hernandez Rios*), the court compared "'awareness of guilt'" with "'consciousness of guilt'" and determined they were essentially the same statement of a defendant's state of mind. (*Id.* at pp. 1158-1159.)[] Because CALCRIM No. 372 states the evidence of flight may show "awareness of guilt," which is the same as "consciousness of guilt," which was approved by the *Di Stefano* court, defendant has no reason to complain.

People v. Gosal, No. CO74473, 2015 WL 3563543, at *4-5 (Cal. Ct. App. June 9, 2015)

(footnotes omitted).

////

**b.     Discussion**

Due process "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Francis v. Franklin, 471 U.S. 307, 313 (1985) (citing cases). Instructions that create "a mandatory presumption of intent upon proof by the State of other elements of the offense" have this effect. Id.

However, permissive inferences ordinarily do not violate due process. See Francis, 71 U.S. at 314. For they "still require[] the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Id. "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id. at 314–15; see also Yates v. Evatt, 500 U.S. 391, 402 n.7 (1991) ("A permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational." (citing Franklin, 471 U.S. at 314–15)), abrogated on other grounds by Estelle, 502 U.S. at 73 n.4.

The inferences that Petitioner takes issue with do not mandate a finding of guilt if the predicate conduct is found: hiding evidence in CALCRIM No. 371, or running away in CALCRIM No. 372. Indeed, both instructions specifically prohibited a finding of guilt based solely on evidence that a defendant hid evidence or ran away, respectively. Thus, the question is whether the inferences that were permitted were in fact impermissible.

Petitioner contends that they were and proffers several other explanations unrelated to awareness of guilt for why a defendant would, for example, run away, including fear of being wrongly accused or fear of retaliation from a victim's friends. But habeas relief is not warranted simply because there are alternative possible inferences to be made. It is warranted only if the inference that *was* made by the jury was "not one that reason and common sense could justify in light of the proven facts before" it. Under that standard, the Court finds that the jury's inference was permissible based on the facts that were before it.

Accordingly, Petitioner is not entitled to relief on this ground, either.

////

**CONCLUSION**

For the foregoing reasons, this Court finds that Petitioner has failed to establish a constitutional violation. Therefore, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: June 24, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7
DB/Inbox/Substantive/gosa2101.fr